HOOPER et al. v. LOTTMAN et al.    (No. 364.)

(Court of Civil Appeals of Texas.   El Paso. Nov. 19, 1914.   Rehearing Denied Dec. 10, 1914.)

1. COVENANTS (§ 77*) — RESTRICTIVE COVENANTS—RIGHT TO ENFORCE.

Whether a person, not a party to a restrictive covenant, may enforce it depends upon the intention of the parties making the covenant.

[Ed. Note.—For other cases, see Covenants, Cent. Dig. §§ 77–89;  Dec. Dig. § 77.*]

**2. COVENANTS (§ 21*) — RESTRICTIVE COVENANTS—INTENTION OF PARTIES.**

The intention of the parties to a covenant restricting the use of land is to be ascertained from the deed itself, construed in connection with the circumstances existing at the time of execution.

[Ed. Note.—For other cases, see Covenants, Cent. Dig. § 20; Dec. Dig. § 21.*]

**3. COVENANTS (§ 79*) — RESTRICTIVE COVENANTS—ENFORCEABILITY.**

Where the owner of a tract of land, intended to be sold for residence purposes, imposed restrictive covenants, calculated to preserve the residential character of the property, in the deeds to the several grantees, the restriction is for the benefit of all of the lots, and individual lot owners may enforce compliance with the covenant.

[Ed. Note.—For other cases, see Covenants, Cent. Dig. §§ 78–82; Dec. Dig. § 79.*]

**4. COVENANTS (§ 84*) — RESTRICTIVE COVENANTS — ENFORCEMENT — PERSONS AGAINST WHOM.**

A covenant restricting the use of lots which were part of a tract divided and sold for residence purposes may be enforced against the grantee of an original purchaser, where he bought with actual or constructive knowledge of the purpose of the covenant, to benefit all of the lots.

[Ed. Note.—For other cases, see Covenants, Cent. Dig. §§ 90–92; Dec. Dig. § 84.*]

**5. COVENANTS (§ 79*) — RESTRICTIVE COVENANTS—ENFORCEABILITY.**

While uniformity in the restrictions imposed upon the several lots in a residential district is one of the strongest proofs of the existence of a building scheme, it is evidentiary only, and the fact that covenants prohibiting purchasers from building stables within certain distances of the streets varied with the various lots does not render such covenants unenforceable by individual purchasers.

[Ed. Note.—For other cases, see Covenants, Cent. Dig. §§ 78–82; Dec. Dig. § 79.*]

**6. COVENANTS (§ 74*) — RESTRICTIVE COVENANTS—ENFORCEABILITY.**

That a covenant restricting the use of lots in a residence subdivision was omitted in conveyances of land to a water company will not prevent purchasers from enforcing the covenant; the furnishing of water to persons living in the district being an absolute necessity, and the necessary use of land by a water company being inconsistent with covenants applicable to residence property.

[Ed. Note.—For other cases, see Covenants, Cent. Dig. § 73; Dec. Dig. § 74.*]

**7. INJUNCTION (§ 113*)—RIGHT TO—DELAY.**

Persons desirous of enforcing a covenant restricting the use of land will not be denied an injunction for that purpose, where they made protest upon discovering it was about to be violated, and instituted suit as soon as the protests were shown to be unavailing.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 198–201; Dec. Dig. § 113.*]

Appeal from District Court, Harris County; Norman G. Kittrell, Judge.

Action by J. C. Hooper and another against H. W. Lottman and others. From a judgment for defendants, plaintiffs appeal. Reversed and remanded.

Sam, Bradley & Fogle, of Houston, for appellants. Ellis P. Collins and S. H. Brashear, both of Houston, for appellees.

HIGGINS, J. J. C. Hooper and the Hyde Park Water Company, a corporation, brought this suit against H. W. Lottman and Norbert Lottman, owners of the east half of lot 3 in block 19 in Hyde Park addition to the city of Houston, and against R. J. Rochow, a contractor and builder, to restrain and enjoin them from erecting, completing, or using a barn upon said premises within a distance of 60 feet from Fairview avenue.

Hooper resided and owned property in the Hyde Park addition, and the Hyde Park Water Company owned the west half of said lot 3 and other property therein. The Hyde Park Improvement Company, a corporation, was the common grantor of the plaintiffs and Lottmans. Said company was the owner of the Hyde Park addition to the city of Houston, and subdivided and laid same out in lots, blocks, and streets. The company, having disposed of all its holdings, was dissolved and is no longer in existence. The addition was designed and intended by the company to be an exclusively residential district, and in furtherance of this design a resolution was adopted by its board of directors, providing certain building restrictive clauses should be contained in the deeds to property sold by the company. One of the restrictive clauses reads: "No barn or building of similar nature shall be erected closer than ——— feet to any street." Not more than two deeds to purchasers were executed without this restrictive clause. The blank space was filled in differently in the various deeds, so that there was not absolute uniformity in the distances from streets within which the prohibited class of buildings might be erected. The deed the Lottmans claimed under stipulated that the prohibited buildings should not be erected closer than 60 feet to the street.

There has been much judicial writing upon the subject of restrictive covenants of the kind here considered, and as may be anticipated, from the very nature of the topic, the cases abound in fine and subtle distinctions. Many of the decisions upon this branch of the law appear to be in hopeless conflict, but are usually reconcilable when the facts peculiar to each are understood. In fact, the courts seem to have had no special difficulty in ascertaining and declaring the controlling general principles of the law, but, in their application to concrete facts, it may well be said that the decisions are in hopeless conflict and confusion, and individual cases are without value as precedents, except as general principles are recognized and declared. No attempt will therefore be made to analyze the decisions, as applied to the various state of facts upon which they are based.

[1-4] Whether a person not a party to a restrictive covenant has the right to enforce it depends upon the intention of the parties in imposing it. This intention is to be ascertained from the language of the deed it-

self, construed in connection with the circumstances existing at the time it was executed. The vendor's object in imposing the restrictions must in general be gathered from all the circumstances of the case, including the nature of the restrictions. If the general observance of the restriction is in fact calculated to enhance the values of the several lots offered for sale, it is an easy inference that the vendor intended the restriction for the benefit of all the lots. The most familiar cases in which courts of equity have upheld the right of owners of land to enforce covenants to which they were not parties are those in which it has appeared that a general building scheme or plan for the development of a tract of land has been adopted, designed to make it more attractive for residential purposes by reason of certain restrictions to be imposed on each of the separate lots sold. This forms an inducement to each purchaser to buy, and it may be assumed that he pays an enhanced price for the property purchased. The agreement therefore enters into and becomes a part of the consideration. The buyer submits to a burden upon his own land because of the fact that a like burden imposed on his neighbor's lot will be beneficial to both lots. The covenant or agreement between the original owner and each purchaser is therefore mutual. The equity in this particular class of action is dependent as much on the existence of the general scheme of improvement or development as on the covenant, and restrictions which contemplate a general building plan for the common benefit of purchasers of lots are recognized and enforced by courts of equity at the instance of the original grantor or subsequent purchasers. So the general rule may be safely stated to be that where there is a general plan or scheme adopted by the owner of a tract, for the development and improvement of the property by which it is divided into streets and lots, and which contemplates a restriction as to the uses to which lots may be put, or the character and location of improvements thereon, to be secured by a covenant embodying the restriction to be inserted in the deeds to purchasers, and it appears from the language of the deed itself, construed in the light of the surrounding circumstances, that such covenants are intended for the benefit of all the lands, and that each purchaser is to be subject thereto, and to have the benefit thereof, and such covenants are inserted in all the deeds for lots sold in pursuance of the plan, a purchaser and his assigns may enforce the covenant against any other purchaser, and his assigns, if he has bought with actual or constructive knowledge of the scheme, and the covenant was part of the subject-matter of his purchase. DeGray v. Monmouth Beach Club House Co., 50 N. J. Eq. 329, 24 Atl. 388; Hano v. Bigelow, 155 Mass. 341, 29 N. E. 628.

The facts in the case at bar bring it within the scope of the general rules stated, and we will but briefly advert to the contentions made by appellees in support of the judgment rendered in their favor.

[5, 6] It is asserted, first, that a general plan of improvement is not shown because the restrictions in some deeds vary as to the distance from streets within which barns and similar buildings may be erected; also that in two instances deeds to lots were made without restrictions.

Uniformity in the restrictions imposed on the lots is one of the strongest proofs of the existence of a building scheme. It is an evidentiary matter only, however, and any deviation from uniformity, as to restrictions imposed on any of the grantees, is often seized upon, as a defense to an action to enforce the covenant, on the theory that a general plan of improvement is not shown. There may, however, be departures from the usual restrictions in individual cases without destroying the integrity of the scheme of development as a whole. A want of absolute uniformity for reasons readily apparent does not militate against the view that the restrictions in the deed were in pursuance of a general scheme for improvement of the property. Coates v. Cullingford, 147 App. Div. 39, 131 N. Y. Supp. 700; Morrow v. Hasselman, 69 N. J. Eq. 612, 61 Atl. 369. And although some of the lots may have written restrictions imposed upon them and others may not, yet if the general plan has been maintained from its inception, without material departure therefrom, and if it has been understood and relied upon by those concerned, it is binding and enforceable inter sese. Allen v. Detroit, 167 Mich. 464, 133 N. W. 317, 36 L. R. A. (N. S.) 890.

So it would seem that absolute uniformity in the establishment of the building line, as well as the fact that in two instances lots were sold without any restrictions, does not necessarily destroy the general plan or scheme of improvement. In this connection stress is laid upon the fact that the west half of lot 3 was also conveyed by the Hyde Park Improvement Company to the Hyde Park Water Company, plaintiff, without any restrictions. It seems that the latter company was wholly subsidiary to the former, having the same officers and stockholders, and was formed for the purpose of supplying water to the addition. The property of the water company was conveyed to it by the improvement company in consideration of stock issues by the water company and prorated among the stockholders of the improvement company in proportion to the stock owned by them. The business of the water company was to furnish an absolute necessity to the inhabitants of the addition, and the necessary use of its real estate was inconsistent with restrictions thereon of the nature imposed upon that sold to private individuals, and the fact that this land was

conveyed to the water company without restriction does not at all militate against the consistency of a general plan of improvement by the imposition of building restrictions upon other lots sold and conveyed.

[7] We think, too, there is no merit in the view that Hooper is estopped to complain by reason of the construction of improvements upon property owned by him in violation of the restriction. The evidence discloses that his building was not a barn or of a similar nature. But, if Hooper should be estopped, there is no estoppel whatever against the water company, his coplaintiff. Nor are the parties precluded from asserting their rights by delay in pursuing same. Complaint was made to the Lottmans as soon as it was discovered that they were about to violate the restriction, and legal action was taken as soon as it was discovered protests were unavailing, and that they were determined to violate the covenant in their grantor's deed. Nothing more was required of the plaintiffs to protect their rights.

Reversed and remanded.