O. O. NORWOOD et ux., Appellants,

v.

Mrs. Alden DAVIS et al., Appellees.

No. 10829.

Court of Civil Appeals of Texas.

Austin.

April 26, 1961.

Rehearing Denied May 17, 1961.

Gay & Meyers, Austin, for appellants.

John D. Reed, Cofer & Cofer, Douglass D. Hearne, Austin, for appellees.

ARCHER, Chief Justice.

This suit was brought by appellees who are residents of Travis Heights, a subdivision in the City of Austin, Travis County, Texas, for themselves and as representatives of all other residents and property owners in the addition, to obtain a judgment declaring that the restrictions in Travis Heights are in full force and effect. Appellees also sought to enjoin appellants and others not parties to this appeal from violating the restrictions or attempting to release or modify them. The case was tried before a jury but the Court, at the close of all the testimony, withdrew the case from the jury and rendered judgment for appellees. Appellants duly perfected their appeal to this Court.

The appeal is based on nine points and are that the court erred in holding that the instrument modifying the restrictions to Travis Heights was void, in refusing to hold that the restrictions were modified, in holding that the restrictions were covenants running with the land, in holding that appellees had any interest in enforcing the Travis Heights restrictions, in holding that there were uniform restrictions subject to enforcement by residents by injunction or otherwise, in holding that there was no evidence that conditions in the vicinity of appellants' property had changed so as to render it reasonably unsuitable for residential purposes, in holding that there was no evidence that appellees had acquiesced in the operations of business establishments in Travis Heights, in holding that there was no evidence that appellees had waived any rights to enforce the restrictions, and finally in holding that there was no evidence that the harm to the appellants by being prevented from selling their property for motel purposes would be substantially greater than the harm to appellees if appellants were permitted to sell their property for such purposes.

Appellants are owners of approximately four and one-half acres in the subdivision

in Austin, Texas, known as Travis Heights. The property was originally subdivided by Citizens Loan and Investment Company on May 31, 1913, and appellants acquired their property in the subdivision by various conveyances from the subdivider and others between the years 1921 and 1927.

Appellants' property, which is situated at the Northeast corner of Travis Heights, was at the time appellants bought it bordered by the Colorado River and a park on the North and a park and other property in the subdivision on the east. At the time they bought the main portion of their land and built their home in Travis Heights the land to the east of their property was a wooded area without any streets except for one little roadway leading to a cottage in the woods.

The City of Austin took approximately 1.75 acres of land belonging to appellants to build the Interregional Highway.

Appellants contend that the property they own has been rendered unsuitable for residential use, and that they were forced to buy other property as a new home and say that they contracted the property to a purchaser who proposed to construct a modern motor hotel thereon; that they secured a modification of the original restrictions and obtained a zoning ordinance allowing the construction of a motor hotel.

Appellants present three questions to be decided, and are:

"1. Could the successors in interest to the subdivider of Travis Heights exercise the power to modify the Travis Heights restriction which was specifically reserved in the dedication of Travis Heights that established the restrictions?

"2. May the property owners in Travis Heights enforce the Travis Heights restrictions by injunction where the subdivider reserved the unqualified power to modify the restrictions?

"3. Is there any evidence that a change in conditions has occurred in the vicinity of appellants' property in Travis Heights to warrant a removal of the restrictions by a court of equity?"

The three restrictions which were modified in the instrument of modification hereinafter mentioned are those imposed in paragraph 4 of the Dedication and read:

"4. All lots when sold by the Company shall be subject to the following conditions and restrictions, binding upon the Company's grantee or any successor in title, which may be enforced by injunction or other legal process enforcing and compelling observance of these restrictions and conditions.

"a. No lot shall be sold or leased to any Mexican or person of Negro blood, or to any corporation or firm composed of Negroes or Mexicans.

"b. Except upon the written consent of the company no residence shall be erected to cost less than three times the selling price at which the Company sells the lot or less than one thousand dollars.

"c. No lot or part thereof shall be used for illegal or immoral purposes, or for sale of spiritous, vinous, malt or other intoxicating liquors.

"d. Except by written consent of the Company no building shall be erected nearer than twenty-five feet of any street upon which said lot may front, and all barns, stables and stable yards erected on said premises shall be next to the alley and not closer than twenty-five feet to any street line.

"e. All telephone or electric light poles and sewer pipes placed by the lot owner shall be placed in the rear of such lot and in the alley if there be one; this may be modified by the written consent of the Company.

"f. Said property shall be used only for residence purposes; this may be modified by the written consent of the company.

"g. The Company reserves the right to construct cement sidewalks and curbing in front of every lot and along any street upon which such lot may be, and if so constructed the actual cost of such work not to exceed the current rates therefor shall constitute a part of the purchase price of such lot and the lien may exist to secure the payment of such amount. If the City of Austin should order the construction of such cement sidewalks and curbing the cost thereof shall be a part of the purchase price of such lot and the lien may exist thereon to secure the payment of such amount."

The modification agreement changed only the restrictions in subparagraphs d, e and f of paragraph 4 of the dedication, and the property affected by the agreement was that owned by appellants.

The agreement, after reciting in sequence the dedication, dissolution of the corporation, succession by the Stacy heirs and the assigned reason for a change in the restrictions and a description of the property affected, provides:

"Insofar as they affect the property described above said restrictions 'd', 'e' and 'f' are hereby modified as follows:

"1. Restriction 'd' is so modified, eliminated and removed as to permit the construction or erection of a building at any location on said O. O. Norwood property as may be permitted by the zoning ordinances and regulations and Building Code of the City of Austin now or hereafter applicable to said property, and the undersigned expressly consent to the erection of such buildings as shall comply with the setback requirements of the City of Austin.

"2. Restriction 'e' is modified to the extent that telephone poles, electric light poles and sewer pipes may be placed at any location on said O. O. Norwood property that the owner of said property may select.

"3. Restriction 'f' is modified, eliminated and removed so as to permit the use of said property for any lawful use permitted by the zoning ordinances and regulations and Building Code of the City of Austin.

"Except as to the above stated modifications, elimination and removal of restrictions 'd', 'e' and 'f' insofar as they apply to the above described premises all restrictions heretofore existing in said Travis Heights subdivision shall remain in full force and effect."

Citizens Loan & Investment Company began the development of Travis Heights, but did not complete such development, and on December 15, 1930 transferred all of its property, rights and powers to Stacy Realty Company using the following:

" * * * all of its right, title and interest in and to all streets, alleys, property of every kind and description of whatsoever nature; rights, privileges, covenants, easements, choses in action, which it may now be the owner of; and further which may be reserved and which has been reserved and retained by Citizen's Loan and Investment Company in the dedication of the plat of Travis Heights Addition recorded in Plat Book 3, Page No. 15, above referred to. It being the intention that The Stacy Realty Company shall not only succeed to all of the rights, privileges and appurtenances reserved in said dedication, but also all property of whatsoever nature not conveyed, transferred or assigned by former deeds and instruments vested in The Citizen's Loan and Investment Company."

Stacy Realty Company continued the development of the subdivision until it was dissolved by a court order on August 18, 1938, at which time the stockholders were three Stacy sons, and the modification agreement was executed by one of the sons and the heirs and devisees of the others.

Appellants rely initially on the proposition that the power to modify the restrictions was assignable and cite in support thereof the cases of Couch v. Southern Methodist University, Tex.Com.App., 10 S.W.2d 973; Dodson v. Dooley, Tex.Civ. App., 280 S.W.2d 758, er. ref., N.R.E.; Keith v. Seymour, Tex.Civ.App., 335 S.W. 2d 862, er. ref., N.R.E.

Appellees say that the instrument executed by the Stacy heirs modifying the restrictions is of no force and effect.

Appellees take the position that they, as successors in title to lots in the original subdivision could maintain the suit to enforce the residential restriction upon appellants' property, and that there was no jury issue upon the question of change of conditions and that there was no evidence of change, waiver and paramount equity in favor of appellants.

Appellees say further that if it be interpreted that the original restrictions in the dedication, and the right to modify them by the original dedicator and its successors and assigns forever, then such restrictions were personal and the lot owners never had a right therein and· such were not covenants, not even restrictions, and cite 19 A.L.R.2d 1282.

Appellees say further that if the restrictions were included in the original dedication for the benefit of subsequent lot owners and were a plan for a residential subdivision, then such were covenants and could only be changed according to the terms of the original dedication.

■ We believe that the restrictions were for the benefit of subsequent owners in the addition and not personal to the developer.

The original Dedication, in part, reads:

"The land upon which is situated streets and alleys of this Subdivision remains the property of the Citizens Loan and Investment Company, but the public shall have instead streets, easements for their ordinary use as streets, and the owners of lots in blocks, easements in the alleys in such blocks for the ordinary use as alleys, subject to utility easements.

"2. Any street or part thereof may be (closed) for any public purpose, compensation being made to the owners of lots immediately abutting upon the part so closed.

"3. The alleys within the several blocks are for the benefit of the lot holders within said block, and a majority of such holders may (by) written instrument executed by them and concurred in and signed by the Company close such alley.

"4. All lots when sold by the company shall be subject to the following conditions and restrictions, binding upon the Company's Grantee or any successor in title, which may be enforced by injunction or other legal process enforcing and compelling observance of these restrictions and conditions."

The release agreement relied on by appellants provides:

"Except as to the above modifications, elimination and removal of restrictions 'd', 'e' and 'f' insofar as they apply to the above described premises (Norwood property) all restrictions heretofore existing in said Travis Heights subdivision shall remain in full force and effect."

■■ The power to modify or amend residential restrictions may be reserved but in the exact manner provided in the dedication. Generally where lots are sold with reference to a recorded plat then as against

purchasers the dedication is irrevocable in the absence of consent by the purchasers.

3 Tiffany Real Property, 3d Ed., Sec. 872, p. 511; Kelly v. City of Marlin, Tex. Civ.App., 340 S.W.2d 507; State of Texas v. Clark, Tex., 336 S.W.2d 612.

In Michael v. Crawford, 108 Tex. 352, 193 S.W. 1070, 1071, the court held:

"That the intent of the parties who gave the power ought to govern every construction. He to whom it is given has a right to enjoy the full exercise of it. They over whose estate it is given have a right to say it shall not be exceeded. The conditions shall not be evaded; it shall be strictly pursued in form and substance; and all acts done under a special authority not agreeable thereto nor warranted thereby must be void. 1 Burrow's Reports, 120. * * *

"A power whose exercise involves discretion is not delegable; * * *

"It is to be supposed that the maker, in granting the power of appointment, has determined who shall exercise it. It is his right to restrict its exercise to certain persons or to a certain class of persons. It is a strict power, and the exact conditions imposed in the granting of it should therefore be respected."

In the case of Dodson v. Dooley, supra, the right to assign the power to modify was expressly provided for in the dedication and the right to transfer this power, but the power to reassign or delegate the power to a third person was not authorized.

In Stanford v. Brooks, Tex.Civ.App., 298 S.W.2d 268, it is held that as against restrictions that no fence could be maintained without the written consent of the dedicator.

We believe that the appellees as lot owners and homeowners in Travis Heights could maintain the suit for injunction to enforce the residential restrictions in the subdivision.

As herein set out the original dedication in Sections 4 and f provided for such remedy.

As is held in Hooper v. Lottman, Tex. Civ.App., 171 S.W. 270, 271, affirmed in Curlee v. Walker, 112 Tex. 40, 244 S.W. 497:

"Covenants (Sec. 79)—Restrictive Covenants—Enforceability.

"Where the owner of a tract of land, intended to be sold for residence purposes, imposed restrictive covenants, calculated to preserve the residential character of the property, in the deeds to the several grantees, the restriction is for the benefit of all of the lots, and individual lot owners may enforce compliance with the covenant."

Finley v. Carr, Tex.Civ.App., 273 S.W. 2d 439, er. ref.; Johnson v. Dick, Tex.Civ. App., 281 S.W.2d 171.

There was no jury issue on change, waiver and paramount equity in favor of appellants.

The undisputed facts are that Mr. Norwood purchased his property with the restrictions as a part thereof, and was one of the considerations that caused Mr. Norwood to buy the property for his home.

A portion of Mr. Norwood's property was taken by the City for highway purposes and Mr. Norwood was paid for it.

There has been no commercial establishments built in the area of the Norwood property and all property facing on the Interregional Highway between the river and two filling stations, the nearest being a mile from the Norwood property, is zoned residential. South on the Interregional Highway there is being developed a new residential section between Travis Heights and the Highway. Mr. Norwood testified that the Interregional Highway was about 200 feet from his residence and nothing had occurred in the vicinity that rendered his property unsuitable for residential purposes.

A contract had been made by Mr. Norwood to sell his property to be used as a motel for $160,000. There was no evidence that the remainder of the Norwood property, after the taking by the city and payment therefor, had been damaged.

There are not more than five deviations from the original restrictions and include a pest control service from a residence, a refrigeration repair call service maintained at the home of another resident, a day nursery, a sign that one resident did income tax work, and an interior decorator.

In Cowling v. Colligan, 158 Tex. 458, 312 S.W.2d 943, it was held that only substantial violation of the restrictions in a residential subdivision could be the basis of a claim of waiver, and the court discussed in detail changed conditions as effecting an original plan.

Protestant Episcopal Church Council of Diocese of Texas v. McKinney, Tex.Civ. App., 339 S.W.2d 400, er. ref.; Western Management Corp. v. High Crest Realty Co., Tex.Civ.App., 331 S.W.2d 365; Alexander Schroeder Lumber Co. v. Corona, Tex.Civ.App., 288 S.W.2d 829.

The instrument executed by the Stacy heirs on April 16, 1957 did not destroy the residential restrictions on appellants' property.

We conclude that appellees as property owners in the subdivision had the legal right to enforce compliance with residential restrictions by injunction, and that there has not been a change of conditions which render the residential restrictions invalid and that there was no conflict or dispute in the facts and no jury issue was presented.

The judgment of the Trial Court is affirmed.

HUGHES, Justice (concurring).

To sustain the position appellants take in this case would be to grant, in perpetuity, to the stockholders of the dissolved corporation, Stacy Realty Company, and their legal successors, the right to destroy the residential character of Travis Heights.

This could result in neighbor being pitted against neighbor, one bidding for the right to commercialize his property, the other seeking to maintain the residential character of his own property.

It is my opinion that the right reserved by the subdivider to modify the restrictions impressed upon the subdivision expired when the subdivider, as such, had conveyed all the subdivision.[1]

Appellants do not contend that the Stacy heirs own any unsold lots in Travis Heights. They claim to own as successors to Stacy Realty Company only the power to modify the restrictive covenants.

I have no doubt but that the reservation of the right to modify the restrictive covenants was a valid vested right, nor do I question its assignability. Couch v. Southern Methodist University, Tex.Com. App., 10 S.W.2d 973; Loving v. Clem, Tex. Civ.App., Dallas, 30 S.W.2d 590, writ ref.; Dodson v. Dooley, Tex.Civ.App., Amarillo, 280 S.W.2d 758, writ ref., N. R. E.; Keith v. Seymour, Tex.Civ.App., Houston, 335 S.W.2d 862, writ ref., N. R. E. See also Central Power & Light Co. v. Purvis, Tex. Civ.App., San Antonio, 67 S.W.2d 1086, writ ref., and Thew v. Lower Colorado River Authority, Tex.Civ.App., Austin, 259 S.W.2d 939, writ ref. N. R. E.

It is my opinion, however, that the naked authority to modify the restrictive covenants, under this record, does not now exist.

The general rule is that a covenant attached to an estate cannot endure beyond the termination of the estate. 21 C.J.S. Covenants § 74, p. 933. The estate owned by appellants, the unsold lots, no longer exists.

1. The record shows that Travis Heights Subdivision consists of 53 blocks containing more than 1,000 lots, and that one of the Stacy heirs now owns 3 lots in Travis Heights.

Appellants take the position that the right of modification was personal to the subdivider saying:

"The effect of the provision in the dedication expressly limiting the application of the restrictions to the lots after they are sold and reserving to the developer the uncontrolled right to change the restrictions on the lots after sale is to render the restrictions personal to the developer. It is true that the dedication does provide for the enforcement of the restrictions by injunction or other legal process but it is significant that there is no indication that the grantees of the developer may enforce the restrictions against each other."

Conceding that the Stacy heirs now possess the reservation to modify the restrictive covenants, which they say is a personal covenant, it is a reservation which will not be enforced under the rule that land will not be burdened with personal covenants which are purely for the benefit of one having no interest in the land. Blasser v. Cass, 158 Tex. 560, 314 S.W.2d 807.